IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WILLIAM HOLLY,**

       **Petitioner,**

   **v.**                                 **CIVIL ACTION NO. 1:13cv173**
                                                                **(Judge Keeley)**

**ANNE MARY CARTER, Warden**

       **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On July 23, 2013, the *pro se* petitioner, William Holly, an inmate at FCI Morgantown, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241, seeking additional Good Conduct Credits ("GCT"). The petitioner paid the filing fee on August 28, 2013. On September 18, 2013, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the respondent. On November 19, 2013, the respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause. On December 2, 2013, a Roseboro Notice was issued. On December 23, 2013, the petitioner filed a Response in Opposition to the Motion to Dismiss or for Summary Judgment and on January 6, 2014, the petitioner filed an Amended Response.

### II. FACTS

The petitioner was convicted in the United States District Court for the District of Delaware for conspiracy to defraud the IRS in violation of 18 U.S.C. § 371, willful attempt to evade or defeat tax in violation of 26 U.S.C. § 7201 and conspiracy to commit wire fraud in violation of 18 U.S.C.

1

§ 1349. On August 26, 2010, he was sentenced to a term of imprisonment of 48 months to be followed by three years of supervised release.

The petitioner was committed to the custody of the BOP on September 27, 2010. On November 14, 2010, the petitioner began GED classes. The petitioner completed 284 hours of GED instruction. The petitioner withdrew from the GED program on August 29, 2011, without completing his GED. On August 29, 2011, the petitioner was placed in GED Unsatisfactory status. Because of this status, the petitioner earns 42 days of GCT per year instead of the maximum 54 days which prisoners can earn. As of September 17, 2013, the petitioner had earned 126 days of GCT credit because he had served three years of his sentence and earned 42 days per year. The petitioner is projected to earn 24 additional days of GCT credit from September 17, 2013 through his projected release date. This will total 150 days of GCT credit that will be applied toward the petitioner's sentence. If the petitioner earns all GCT credit projected, he is scheduled to be released on April 20, 2014.

### III. **CONTENTIONS OF THE PARTIES**

Petitioner makes the following arguments in his Application for Habeas Corpus:

(1) He completed the minimum of 240 instructional hours of an adult literacy program and thereafter he could elect to withdraw without imposition of disciplinary action; and

(2) Reducing his GCT from 54 days to 42 days equates to disciplinary action and is contrary to the BOP's own regulations; and

(3) Even if the reduction in good conduct time does not equate to disciplinary action, he is entitled to ten (10) days addition GCT for the 10/12 of the year he sought his GED certificate.

The Government contends that the petition should be dismissed because:

(1) The petitioner's GCT was appropriately awarded, and he is not entitled to an additional

2

Good Time Credit;

    (2) The BOP's interpretation of 18 U.S.C. § 3624 is entitled to deference; and

    (3) The BOP awards GCT credit at the end of each year of incarceration.

In his reply the petitioner again argues that reducing his GCT from 54 days to 42 days constitutes improper punishment.

### IV. <u>STANDARD OR REVIEW</u>

**A. <u>Motion to Dismiss</u>**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations

omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon , 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla

4

of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986

## V. **DISCUSSION**

The BOP is required to provide literacy programs for inmates in federal institutions. See 18 U.S.C. § 3624(f). In particular, this section of the Code directs the BOP to determine a mandatory period of time that each eligible inmate is **required** to attend the literacy program.(emphasis added). Pursuant to a statutory mandate found in 18 U.S.C. § 3624(f), the BOP requires any inmate without a high school diploma or GED to attend instructional until such time as they complete 240 hours of attendance or obtain a GED, whichever occurs first. See 28 C.F.R. § 544.70. Inmates in this category must participate in the literacy program and participation is not optional. The BOP denies certain privileges to any inmate who refuses to participate in or withdraws from the program before the minimum 240 hours is completed.

Section 3624 of the United States Code also directs the BOP to implement "appropriate incentives which lead to successful completion of such programs." See 18 U.S.C. § 3624(f)(2).As a result, if an inmate does not obtain his GED within the 240 hours, the BOP offers GCT credits to

5

encourage further participation. See 18 U.S.C. 3624(f)(2). As a result, if an inmate does not obtain his GED within 240 hours, the BOP offers GCT credits to encourage participation. Specifically, 54 days of GCT will be awarded if the inmate has earned or is making satisfactory progress towards his GED. 28 C.F.R. § 523.20(c)(1).; see also 18 U.S.C. § 3624(b)("In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma, or an equivalent degree. Credit that has not been earned may not later be granted."). Although once an inmate has completed the mandatory 240 hours his is not subject to any disciplinary sanctions, if he refuses to participate beyond that to obtain his GED, the BOP does reduce the rate of GCT earnings if the inmate refuses to continue the program. Specifically, if an inmate chooses not to pursue a GED beyond the mandatory 240 hours, 28 C.F.R. § 523.20(c)(2) provides that the BOP shall award only 42 days of GCT credit. See also BOP Program Statements 5350.28 & 5884.43.[1]

Federal courts have held that prisoners do have a liberty interest in earned GCT credits because they directly and inevitably affect the duration of a prisoner's confinement. See, e.g., Louis v. Dep't of Corr. Servs. Of Neb., 437 F.3d 697, 700 8th Cir.) ("The inmates possess a protected liberty interest in not being arbitrarily deprived of their good-time credits, and thus NSP ]Nebraska State Penitentiary] must observe dye process when credits are in issue.") cert. denied, 549 U.S. 847 (2006); Bridgeman v. Ault, No. 98-3681 SI, 1999 WL 425834, at *1 (8th Cir. June 14, 1989) ("An inmate must be afforded procedural protections before being deprived of a protected liberty interest in good-time credits") (citing Wolff v. McDonell, 418 U.S. 539, 561-66 (1974)).

In a disciplinary context, where an inmate has been charged with misconduct and face a loss

---

[1]Available at www.bop.gov.

6

of GCT, he is entitled to some protections. However prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The application of such procedural due process is aimed at ensuring that disciplinary action that may result in the loss of GCT credit is not arbitrary or capricious. Where a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

However, the GCT credit that the petitioner is disputing in this case, is not earned time that is being disallowed as a result of some serious misconduct on his part. Rather, petitioner has not earned the maximum GCT credit because he voluntarily withdrew from the GED Literacy program. Prisoners do not have a liberty interest in the opportunity to earn good conduct time. See, e.g., Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (holding that inmate has no liberty interest in the opportunity to earn good time credit); Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991) (noting that "[w]hen [a] statute is framed in discretionary terms there is not a liberty interest created")(internal quotation marks omitted). Because the petitioner does possess a liberty interest in the status of being able to earn 54

days of GCT per year, his status of merely earning 42 days of GCT per year does not deprive him of any liberty interest.

Furthermore, even if the petitioner did have a liberty interest in maintaining the status of earning 54 days of GCT per year, he was given the procedural due process to which he was entitled. There appears to be no dispute that the petitioner completed 284 hours of GED and withdrew without obtaining his GED. Accordingly, the petitioner was placed in GED unsatisfactory status, and his annual GCT was reduced to 42 days. The statutes and regulations cited above provided him notice of the consequences of withdrawing. In addition, when he voluntarily withdrew from the program, he signed an acknowledgment of the ramifications of his decision. (Doc. 29-3, p. 3). Finally, the petitioner was given an opportunity to contest his claim that he should be entitled to 54 days GCT credit even though he withdrew from the literacy program. He was given that opportunity through the administrative remedy process, which he pursued. (Doc. 29-3).

In reaching the conclusion that the petitioner is not entitled to 54 days of GCT because he withdrew from the literacy program before obtaining his GED, the undersigned is mindful of the opinion reached in Snider v. Daniels, 445 F.Supp.2d 1233 (D.Or. 2006). In that case, the Court concluded that once a prisoner completes the 240 hours of required instruction, he is entitled to the 54 hours of GCT credit, even if he withdraws from the program and does not continue to make satisfactory progress towards a GED. However, the court's reasoning in Snider ignores the fact that the BOP issued Program Statement 5884.03, which specifically addresses the issue of earning GCT under the PLRA. Unlike BOP Program Statement 5350.28, which only addresses the requirement of taking 240 hours of instruction, BOP Program Statement 5884.03 addresses how many GCT credits are given when an inmate withdraws from the program. This Program Statement carries out the policy expressed in 28 C.F.R. §§ 523.20 and 544.73(b) that GCT credit of 54 days for each year

served should be awarded for inmates who have earned, or are making satisfactory progress towards earning a GED:

> For inmates serving a sentence for an offense committed on or after April 26, 1996, the bureau will award
>
> (1) 54 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; or
>
> (2) 42 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma.

Therefore, the undersigned finds that the reasoning expressed by the Court in Snider is flawed and should not be applied by this Court. See De La Cruz v. Zickefoose, 450 Fed. Appx. 123 (3rd Cir. 2011); Holman v. Cruz, 2008 WL 5244580 *4 (D. Minn. Dec. 15, 2008); Martin v. Hogsten, 2009 WL 33446 *4 (E.D.Ky. Jan. 5, 2009).

Finally, to the extent the petitioner argues that he is owed ten pro-rated days of GCT for the ten months that he was enrolled in the GED program, the same is misplaced. Pursuant to 18 U.S.C. § 3624(b), an inmate is eligible for an award of up to 54 days of GCT credit beginning at the end of the first year of the inmate's term of incarceration. Subsequent awards of GCT credit are made at the end of each additional year of incarceration. The Supreme Court has upheld the BOP's practice of awarding GCT at the end of each year of imprisonment, noting that this calculation method "tracks the language of § 3624(b)." Barber v. Thomas, 130 S.Ct. 2499, 2504 (2010). Because the BOP calculates GCT credit at the end of the year, an inmate must be making satisfactory progress in a GED program at the end of the year to receive an award of 54 days of GCT credit for the year.

9

In the instant case, the petitioner's first year of incarceration began on September 27, 2010, the date he was committed to BOP custody. Therefore, pursuant to the statute, he would be awarded GCT credit at the end of the first year of incarceration, on September 26, 2011. The petitioner dropped out of the GED program on August 26, 2011, before the end of his first year of incarceration. Therefore, he had a status of GED Unsatisfactory when the determination of GCT credit was made on September 26, 2011, and he was eligible for only 42 days of credit per year.

Although the petitioner argues that 28 C.F.R. § 523.20 directs the BOP to pro-rate GCT credit for any time an inmate spends in the GED program during the year, the petitioner misreads the regulations. The relevant section of the regulation provides that the BOP will award:

> 54 days credit for each year served (prorated when the time served by
> the inmate for the sentence during the year is less than a full year) if
> the inmate has earned or is making satisfactory progress toward earning
> a GED credential or high school diploma.

28 C.F.R. § 523.20(c)(1). Clearly, "time served by the inmate for the sentence during the year is less than a full year" refers to the time an inmate spends incarcerated during the year. It does not refer to the time the inmate spends in a GED program during the year. Because the petitioner withdrew from the program before the end of his first year of incarceration, he could not earn more than 42 days GCT, despite the fact that he was enrolled in the program for ten months.

## VI. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, Motion for Summary Judgment (Doc. 21) be **GRANTED**, and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: March 18, 2014.

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE